Simon Peter Serrano, WSBA No. 54769
Karen L. Osborne, WSBA No. 51433
Austin Hatcher, WSBA No. 57449
Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301
(509) 567-7083
pete@smfjb.org
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
### AT YAKIMA

| | |
|---|---|
| RICHARD S. WILKINSON, an individual, RYAN N. COLE, an individual, and RICHARD J. EGGLESTON, an individual, | CASE NO.: _____ |
| Plaintiffs, v. | COMPLAINT FOR TEMPORARY RESTRAINING ORDER, DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983 |
| SCOTT RODGERS in his personal capacity and in his official capacity as a Member of the Washington Medical Commission, MONICA DE LEON in her personal capacity and in her official capacity as Executive Director of the Washington Medical Commission, JIMMY CHUNG, in his personal capacity and in his official capacity as chair of the Washington Medical Commission, KAREN DOMINO in her personal capacity and in her official capacity as chair elect of the Washington Medical Commission, TERRY MURPHY in his personal capacity and in his official capacity as vice chair of the Washington Medical Commission, SARAH LYLE in her personal | JURY DEMAND |

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF FOR VIOLATION OF
FEDERAL CIVIL RIGHTS UNDER
42 U.S.C. § 1983

capacity and her official capacity as a Member of the Washington Medical Commission, PO-SHEN CHANG in his personal capacity and in his official capacity as a Member of the Washington Medical Commission, APRIL JAEGER in her personal capacity and in her official capacity as a Member of the Washington Medical Commission, CLAIRE TRESCOTT in her personal capacity and in her official capacity as a Member of the Washington Medical Commission, ANJALI D'SOUZA in her personal capacity and in her official capacity as a Member of the Washington Medical Commission, HARLAN GALLINGER in his personal capacity and in his official capacity as a Member of the Washington Medical Commission, MABEL BONGMBA in her personal capacity and in her official capacity as a Member of the Washington Medical Commission, RICHARD WOHNS, in his personal capacity and in his official capacity as a Member of the Washington Medical Commission, ELISHA MVUNDURA, in her personal capacity and in her official capacity as a Member of the Washington Medical Commission, DIANA CURRIE, in her personal capacity and in her official capacity as a Member of the Washington Medical Commission, ED LOPEZ in his personal capacity and in his official capacity as a Member of the Washington Medical Commission, ARLENE DORROUGH in her personal capacity and in her official capacity as a Member of the Washington Medical Commission, TONI BORLAS, in his personal capacity and in his official capacity as a Member of the Washington Medical Commission, CHRISTINE BLAKE in her personal capacity and in her official capacity as a Member of the Washington Medical

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND VIOLATION OF CIVIL RIGHTS UNDER 42 USC § 1983- 1

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

Commission, ROBERT PULLEN, in his personal capacity and in his official capacity as a Member of the Washington Medical Commission, MICHAEL BAILEY in his personal capacity and in his official capacity as a Member of the Washington Medical Commission, YANLING YU, in her personal capacity and in her official capacity as a Member of the Washington Medical Commission, ALDON W. ROBERTS in his personal capacity and in his official capacity as a Member of the Washington Medical Commission, JOHN MALDON in his personal capacity and in his official capacity as a Member of the Washington Medical Commission, MICHAEL FARRELL in his personal capacity and in his official capacity as Washington Medical Commission Staff Attorney and Policy Development Manager,

Defendants.

## I. INTRODUCTION

On September 22, 2021, through a Special Meeting with limited notice[2] and

---

1 Governor Jay Inslee declared a COVID-19 State of Emergency on February 29, 2020; the WMC could have issued a rule any time in the 18 months preceding the issuance of the Statement but chose not to. *See: Proclamation 20-05, COVID-19.* Available at: https://www.governor.wa.gov/sites/default/files/proclamations/20-05%20Coronavirus%20%28final%29.pdf. Last accessed February 6, 2023.

2 Meeting notice available at: https://wmc.wa.gov/meetings/special-meeting-covid-19-misinformation-statement. Last accessed February 6, 2023.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 2

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

without opportunity for public comment,[3] the Washington Medical Commission ("WMC") adopted a position statement on *COVID-19 Misinformation* ("Statement" or "Position Statement"). *See:* Exhibit 1. No attendance roster of this Meeting was published. The Statement officially extended the WMC's "support[] [of] the position taken by the Federation of State Medical Boards (FSMB) regarding COVID-19 vaccine misinformation" and adopted a standard of care for Washington medical providers' treatment of COVID-19. That "standard" adopted through the Statement was a deferral to and reliance on the FDA's approval of medication COVID-19 treatment: "WMC relies on the U.S Food and Drug Administration approval of medications to treat COVID-19 to be the standard of care." Notably, the Washington State Legislature had already adopted a COVID-19 standard of care on May 10, 2021, through the adoption of Substitute Senate Bill 5271, *Civil Actions Against Health Care Providers—COVID-19 Pandemic*, which was adopted as Revised Code of Washington ("RCW") Section 7.70.040. Exhibit 2. RCW 7.70.040(1) provides the following "reasonably prudent" standard for medical professionals: "a health

_____

3 Washington Medical Commission Special Meeting, September 21, 2021. "While this meeting is open to the public, we will not be taking public comment or responding to questions during this meeting." Available at:

https://www.youtube.com/watch?v=P5qDoNWfdhI. Last accessed: February 2, 2023.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 3

<table><tr><td>Silent Majority Foundation<br>5238 Outlet Dr.<br>Pasco, WA 99301</td></tr></table>

care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances." *Id.* Moreover, RCW 7.70.040 set forth specific elements of proof that the Statement failed to adopt. The WMC's adoption of the "standard," which it now enforces against Plaintiffs, via the Statement was unjustified, undefined, unnecessary, and duplicative as it was non-binding and was preceded by 7.70.040 over four months. More importantly, the Statement was adopted and implemented outside the WMC's statutory authority and legal rulemaking processes violating the Administrative Procedures Act in addition to violating Plaintiffs' civil rights. *See:* Count V, below. These circumstances show good cause as to why the WMC's statutory immunity found in RCW 18.130.300(1) does not apply leaving Defendants with no immunity.

In addition to adopting a standard of care, the WMC has enforced the Statement against medical practitioners, including all three Plaintiffs. Plaintiffs Cole and Wilkinson have been subject to charges based both on their speech and on their reasonable treatment of patients based on this statement. Plaintiff Eggleston has been subject to charges based solely on his speech as he is currently retired.

Finally, the Statement shows its naked bias and discrimination by encouraging reporting of "violators" of the "standard," as follows: "The public and practitioners are encouraged to use the WMC complaint forms when they believe the standard of care has been breached." The WMC has weaponized its illegal Statement throughout the COVID-19 pandemic, even though it has not updated the Statement with current

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 4

science or data and continues to punish medical professionals who fail to adhere to the stale information and data from 2020 and 2021 relied upon by the WMC when it adopted the Statement. For example, the Statement did not change position on vaccines, even when Dr. Anthony Fauci, former director of Nation Institute of Allergy and Infectious Diseases Dr. Rochelle Walenksy, Director of the Center for Disease Control, admitted that the vaccines were ineffective in ceasing transmission of COVID-19.[4] Moreover, the WMC has ignored, whether maliciously,

_____

4 *See:* Centers for Disease Control and Prevention, COVID-19, *Interim Public Health Recommendations for Fully Vaccinated People*, July 27, 2021. Available at: https://web.archive.org/web/20210728032236/https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html; *Fully vaccinated people who get a Covid-19 breakthrough infection can transmit the virus, CDC chief says*, August 6, 2021. Available at: https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html; *Fauci admits that COVID-19 vaccines do not protect 'overly well' against infection*, Fox News, July 12, 2022. Available at: https://www.foxnews.com/media/fauci-admits-covid-19-vaccines-protect-overly-well-infection. Last accessed: February 24, 2023. *See also:* United States House of Representatives Committee on Oversight and Accountability Press Release, March 8, 2023: *COVID Origins Hearing Wrap Up: Facts, Science, Evidence Point to a*

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 5

intentionally, or unintentionally, the FDA's following position on ivermectin, which

is that the FDA's ivermectin statements were:

> [N]onbinding recommendations to consumers, they are not rules and, thus, are not agency action as required for waiver of sovereign immunity. They did not bind the public or FDA, did not interpret any substantive rules, and did not set agency policy.
> The statements are also not final agency action. They do not mark the consummation of FDA's decision-making process because they do not state FDA's final position on the use of ivermectin to treat COVID-19 but instead present FDA's tentative recommendations based on currently available data.
> They also do not have legal consequences for anyone but simply provide nonbinding recommendations to consumers.[5]

*Wuhan Lab Leak*. Available at: https://oversight.house.gov/release/covid-origins-hearing-wrap-up-facts-science-evidence-point-to-a-wuhan-lab-leak%EF%BF%BC/ wherein ex-CDC director, Dr. Robert Redfield testified that Dr. Anthony Fauci's approach to the COVID-19 origins narrative was "antithetical to science." Redfield testified: "If you really want to be truthful, it's antithetical to science. Science has debate, and they squashed any debate." *See also:* https://www.johnlocke.org/ex-cdc-director-takes-fauci-to-task-on-covid/. Last accessed: March 10, 2023.

5 *Apter v. Department of Health and Human Services, et al.*, (SDTX, No.: 3:22-cv-00184) Hearing on Motion to Dismiss, US Department of Justice Attorney, Isaac Belfer (November 1, 2022; asserting FDA position on Ivermectin for treatment of COVID-19.). Exhibit 3.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 6

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

Similarly, the WMC recently argued in the prosecution of Plaintiff Wilkinson's license (in the administrative hearing before the WMC, itself) that the Statement "is an advisory statement intended to help licensees steer clear of the pitfalls of COVID misinformation into which Respondent fell." [6]

The WMC's Position Statement is a complete reversal of a Statement it adopted a short 18 months prior through the "Statement on Chloroquine," which offered providers support, latitude, and discretion in treating COVID-19 patients: "We want providers and pharmacists to act with their best discretion to ensure patients continue to receive appropriate treatment in time of shortages."[7] It is also a markedly different position from the WMC's *Pandemic Regulatory Intent* adopted 18 months prior, which read, in part:

> **[R]egulatory agencies must support the front-line practitioners.** We recognize there are shortages of equipment and that difficult to impossible decisions must be made. … Under these conditions, practitioners need support, not fear of regulatory action. … Under these circumstances, practitioners deserve and have the support of the WMC.

---

6 *In Matter of License to Practice as a Physician and Surgeon of: Richard S. Wilkinson, MD, License No. MD.MD.00016229*, *Commission's Opposition to Respondent's Motion to Dismiss Charges 1.7-1.9.* Filed March 6, 2023.

7 *WMC Statement om Chloroquine*, available at:

https://wmc.wa.gov/news/wmc%C2%A0statement-chloroquine. Adopted March 23, 2020. Last accessed: February 2, 2023.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 7

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

Practitioners should not fear for their well-intentioned actions. During this crisis, the WMC will focus on the intent of the practitioner and the realistic availability or non-availability of possible alternatives. Put another way, when assessing complaints related to practitioner's work we will consider the difficult circumstances and choices they are facing. The WMC wants you to focus on treating the patient in front of you to the best of your ability.[8]

It bears noting that other States have adopted regulations similar to the Statement, including California's Assembly Bill 2098 ("AB 2098"), *Physicians and surgeons: unprofessional conduct*, which adopted California Business & Professions Code § 2270.[9] However, unlike AB 2098, which was adopted through the legislative process and signed into law by Governor Gavin Newsom, the Commission's Statement was adopted in near secret as a "position statement" with little advertisement (limited to the statutory required 24-hour window, *See:* RCW 42.30.080(2)(c)). While the Statement was advertised as a benign, precautionary measure, it has had significant

---

8 *WMC Pandemic Regulatory Intent*, available at: https://wmc.wa.gov/news/wmc-pandemic-regulatory-intent. Adopted March 25, 2020. Last accessed: February 2, 2023. (Emphasis added.)

9 California Assembly Bill 2098: *Physicians and surgeons: unprofessional conduct.*

https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=202120220AB2098. Approved by the Governor, September 30, 2022.  Site last accessed: February 3, 2023.

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

effect on the regulated physicians throughout Washington as it has been the leading edge of the sword used to prosecute medical professionals who willingly speak against the Commission's sanctioned "information."

On January 25, 2023, the District Court for the Eastern District of California GRANTED a Preliminary Injunction, enjoining enforcement of "Cal. Bus. & Prof. Code § 2270 as against plaintiffs, plaintiffs' members, and all persons represented by plaintiffs." *Hoeg v. Newsom*, 2:22-cv-01980-WBS-AC, ECF No.: 35, at 29. *See:* Exhibit 4. With the striking similarities between the challenged California Code and the WMC's Statement challenged in this action, this Court should follow its sister court and enjoin enforcement of the Statement, although the scope of the Injunction should expand to all medical practitioners in Washington.

## II.  JURISDICTION AND VENUE

1. Each Defendant is properly named as an individual who has participated in the review, analysis, or charging any or all named Plaintiffs with a violation of Washington Medical Commission's *COVID-19 Misinformation* Position Statement.

2. Plaintiffs bring this action under Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 and under the First and Fourteenth Amendments of the United States Constitution. This Court has jurisdiction over the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202. This Court has jurisdiction under 28 U.S.C. § 1331 and § 1343.

3. This Court has supplemental jurisdiction over the state law claims under 28

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 9

U.S.C. § 1367.

4. This Court has jurisdiction over costs and attorneys' fees under 42 U.S.C. Section 1988 (b).

5. Venue is proper due to Plaintiffs Eggleston and Wilkinson's residences and Plaintiff Wilkinson's practice within the jurisdictional boundaries of the Eastern District of Washington. Thus, and a substantial portion of the events giving rise to the claims occurred within the Eastern District of Washington. Plaintiff Cole is an out of state resident. 28 U.S.C. § 1391(b)(2).

### III.    PARTIES
### Plaintiffs

6. Plaintiff Richard Wilkinson is a resident of Yakima, Washington and maintains a medical license in Washington. Wilkinson has been licensed to practice as a physician and surgeon in Washington since 1977; Wilkinson's license is issued and regulated by the Commission. Wilkinson is the owner of Wilkinson Wellness Clinic in Yakima, WA. Wilkinson Decl., ¶ 2.

7. The Commission received complaints regarding statements Wilkinson made regarding COVID-19 on his blog maintained on the Wilkinson Wellness Clinic website (https://wilkinsonwellness.com/blog) and for his treatment of patients who had tested positive for COVID-19 with ivermectin. These complaints lead to SOC M2022-196. Exhibit 5: SOC No. M2022-196.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 10

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

8. SOC No. M2022-196 was issued on June 7, 2022, and addresses Wilkinson's public COVID-19 blog statements as follows: "Respondent's public false and misleading statements regarding the COVID-19 pandemic, COVID-19 vaccines, and public health officials are harmful and dangerous to individual patients, generate mistrust in the medical profession and in public health, and have a wide-spread negative impact on the health and well-being of our communities." *Id.*

9. Wilkinson has a hearing before the Commission on SOC No. M2022-196 scheduled for April 3, 2023, through April 7, 2023. The issuance of an injunction as requested in this matter would or could alleviate the need for (all or some of) the hearing, conserving both Wilkinson and the State's resources.

10. Since the Commission has made the investigations of Wilkinson public, including the publication of SOC No. M2022-196, Wilkinson has suffered reputational harm and has suffered a loss his of First Amendment rights as his right to free speech has been accosted and trampled through the Commission's "misinformation" and "disinformation" campaign that culminated in the Statement. Wilkinson Decl., ¶ 7.

11. Plaintiff Ryan Cole is a resident of Idaho and maintains medical licenses in nine states including Washington; Cole's Washington license is issued and regulated by the Commission. Declaration of Ryan Cole, ("Cole Decl."), ¶ 3. Prior to COVID-19, Cole's Washington license allowed him to service Washingtonians who sent skin biopsies to Cole for laboratory review. Cole practices in Idaho but was contacted by

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 11

Washington residents via telehealth seeking assistance with COVID-19 treatment throughout the pandemic. Cole is the former owner of Cole Diagnostics, a medical diagnostic laboratory located in Boise, ID. *Id.*, at ¶ 4.

12. Cole Received his medical degree from Virginia Commonwealth University-Medical College of Virginia, in 1997, then attended a Residency in Anatomic and Clinical Pathology at the Mayo Clinic in Rochester, MN form 1997-2001, which was followed by a Surgical Pathology Fellowship (Chief Fellow) at the Mayo Clinic from 2001-2002. Cole then completed a Dermatopathology Fellowship (Chief Fellow) at the Ackerman Academy of Dermatopathology, Columbia University from 2002-2003. *Id.*, at ¶ 2, Exh., 1.

13. Prior to the COVID-19 pandemic and the Commission's adoption of the Statement, Cole was never disciplined by the Commission. Since the adoption of the Statement, Cole has been the target of many complaints, several of which have been investigated by the Commission. These investigations include, but are not limited to Files No.: 2021-10232, 2021-10853, 2021-11434, 2021-11662, 2021-11729, which, upon information and belief, culminated in the Commission's Statement of Charges ("SOC") No.: 2022-207, issued on January 10, 2023. Exh. 5, SOC No. 2022-207. Cole is represented by legal counsel (not present counsel) to defend SOC 2022-207; a hearing date has not been set.

14. Statement of Charges No.: 2022-207 alleges that Cole:

[M]ade numerous false and misleading statements during public

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 12

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

presentations regarding the coronavirus disease 2019 (COVID-19) pandemic, COVID-19 vaccines, the use of ivermectin to treat COVID-19, and the effectiveness of masks that were harmful and dangerous to individual patients, generated mistrust in the medical profession and in public health, and had a wide-spread negative impact on the health and well-being of our communities. Respondent also provided negligent care to Patients A, B, C, and D to prevent or treat COVID-19 infections. For all of these patients, Respondent prescribed medications that are not indicated for a COVID-19 infection, failed to properly document adequate justification for the treatment in the medical record, failed to take a history or perform a physical examination, and failed to obtain appropriate informed consent. Respondent also provided inadequate opportunity for follow-up care, treated patients beyond his competency level, and did not advise patients about standard treatment guidelines and preventative measures. SOC No.: 2022-207, at 1.

15. The SOC and other investigations have negatively impacted Cole and his practice as Cole has been required to dissolve his Pathology practice, Cole Diagnostics. In 2019 (pre-pandemic), Cole had an offer to sell Cole Diagnostics at the price of $12,000,000, which was subsequently rescinded as revenue declined and due to the negative press on Cole. *Id.*, at ¶ 12.

16. Prior to the COVID-19 pandemic, Cole held contracts with several national and regional insurance carriers; however, the negative implications of the board reports and the associated media attention, in-network contracts with St. Luke's Health Partners, Pacific Source, Mountain Health Co-op, and Cigna were terminated after Commission's publication of the Charges against Cole.

17. Since the Commission has made the investigations of Cole public, including the publication of SOC No. No 2022-207, Cole has lost several of these contracts, including the following contracts. *Id.*, at ¶ 4. Pre-pandemic, in 2019, Cole

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND VIOLATION OF CIVIL RIGHTS UNDER 42 USC § 1983- 13

Laboratories had a net income of $2,102,165; the net income for 2020 increased to $3,341,732 with a maintenance of the value of diagnostic services and an increase of revenue for COVID-19 testing; the 2021 net income decreased to $2,530,107; and the 2022 net income decreased to a loss of $13,403. *Id.*, at ¶ 4; Exh. 2. The 2021 decreases in net income were primarily related to the loss of revenue associated with COVID-19 testing, and the 2022 income loss was due to the lost insurance contracts. *Id.*

18. Prior to the dissolution of Cole Diagnostics, Cole anticipated working 10 more years and would have sold Cole Diagnostics at the conclusion of that period. Assuming a conservative annual revenue stream of $2,000,000 (based on the 2019-2021 net income) and factoring in the potential sales of Cole Diagnostics at the $12,000,000 offer, Cole would have had a total net income of $32 million at the conclusion of ten years, including the sales of Cole Diagnostics. *Id.*, at ¶ 13.

19. Aside from these damages, Cole has suffered reputational harm, having lost his Fellow status from the College of American Pathologists; has been informed that the American Board of Pathology has corresponded with states where Cole holds a license, to support disciplinary actions against Cole based his public statements related to COVID-19; and Cole lost his position as President Elect for Independent Doctors of Idaho. Cole has also suffered a loss of First Amendment rights as his right to free speech has been accosted and trampled through the Commission's "misinformation" and "disinformation" campaign that culminated in the Statement.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 14

*Id.*, at ¶ 14.

20. Cole has suffered other damages, including $50,000 in attorney fees spent in the defense of his license; limitations on his ability to practice medicine as discussed, above, and because of the time and effort spent in the defense of his license; difficulty in hiring and retaining employees due to the threats and difficult working conditions stemming from the opposition to Cole's positions; and undue stress on Cole's marriage and family for the personal and professional attacks he has suffered (including death threats) since he first openly advocated for early COVID-19 treatment. *Id.*, at ¶ 15.

21. Plaintiff Richard Eggleston is a resident of Washington and was issued a license by the Commission to practice as a physician and surgeon on September 16, 1974. Exh. 5, at 1. Eggleston maintains a medical license in Washington in "active retired" status. Eggleston's license is issued and regulated by the Commission. Eggleston was the owner of Eggleston Eye Care Specialists in Clarkston, WA. prior to his retirement in 2012. Since his retirement, Eggleston has not actively treated patients, and has treated no COVID-19 patients. Eggleston, Decl., ¶¶ 2-4.

22. The Commission's investigations of Eggleston, including the charges in SOC No. M2022-204, are founded on Eggleston's speech, specifically, statements Eggleston made in "a periodic newspaper column for a regional newspaper that serves southeastern Washington and north central Idaho." Exh. 6, at 1. Defendants concluded that these statements were "false" and constitute the "promulgat[ion] [of]

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 15

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

misinformation regarding the SARS-CoV-2 virus and treatments for the virus." *Id.*, at 2.

23. Since the publication of SOC No. M2022-204, Eggleston has suffered reputational harm and has suffered a loss his of First Amendment rights as his right to free speech has been accosted and trampled through the Commission's "misinformation" and "disinformation" campaign that culminated in the Statement. Specifically, because Eggleston is not actively treating/receiving patients, his alleged "misinformation" and "disinformation" arises from publishing his opinions on COVID-19 as founded in his research, in the Lewiston Tribune.[10] Eggleston, Decl., ¶ 4. In fact, the entirety of the SOC is based on Eggleston's speech against the mainstream COVID-19 narrative. Eggleston is no longer actively practicing medicine; the WMC is clearly targeting his speech. Eggleston has a 3-day hearing scheduled for his license May 24 - 26, 2023.

24. SOC M2022-204 has also resulted in Eggleston needing to hire counsel (not present counsel) to defend his license and speech rights against the Commission's

_____

10 See: *Opinion: What I wrote was intentional, but nit in error.* Eggleston, Richard. *Lewiston Tribune*, October 2, 2022. Available at:

https://lmtribune.com/opinion/opinion-what-i-wrote-was-intentional-but-not-in-error/article_46557752-7717-5672-9735-a6ed2871705d.html. Last accessed: February 15, 2023.

enforcement of the Statement.

25. All Plaintiffs have submitted a tort claim informing the State of Washington of the violations of each Plaintiff's civil rights alleged herein allowing for recovery of damages as deemed appropriate by this court. Exhibit 7 is a true and correct copy of the Washington Department of Enterprise Services' response of receipt of each Plaintiffs' Tort Claim form. Plaintiff Eggleston's claim was submitted on December 16, 2022. Confirmation of the claim was received on December 22, 2022; the claim was assigned Tort Claim #3031011113. Plaintiff Wilkinson's claim was submitted on January 5, 2023. Confirmation of the claim was received on January 9, 2023; the claim was assigned Tort Claim #3031011305. Plaintiff Cole's claim was submitted on February 15, 2023. Confirmation of the claim was received on February 21, 2023; the claim was assigned Tort Claim #3031011775. Exh. 7. Counsel called the Attorney General's Office on March 6, 2023 requesting a status update on each Tort Claim and left a voicemail with the general phone number provided on the Tort Claims. Counsel has received no further response from the AGO regarding the Tort Claims.

## **Defendants**

26. Defendant Scott Rodgers is a member of the Washington Medical Commission and is sued in his personal capacity and in his official capacity. Upon information and belief, Defendant Rodgers participated in the development and adoption of the challenged Statement.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 17

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

27. Melanie De Leon is the Executive Director of the Washington Medical Commission and is sued in her personal capacity and in her official capacity. Upon information and belief, Defendant DeLeon participated in the development and adoption of the challenged Statement.

28. Defendant Jimmy Chung is a member of the Washington Medical Commission, is the chair of the Commission, and is sued in his personal capacity and in his official capacity. Upon information and belief, Defendant Chung participated in the development and adoption of the challenged Statement.

29. Defendant Karen Domino is a member of the Washington Medical Commission, is the chair elect of the Commission, and is sued in her personal capacity and in her official capacity. Upon information and belief, Defendant Domino participated in the development and adoption of the challenged Statement.

30. Defendant Terry Murphy is a member of the Washington Medical Commission, is the vice chair of the Commission, and is sued in his personal capacity and in his official capacity. Upon information and belief, Defendant Murphy participated in the development and adoption of the challenged Statement.

31. Defendant Po-Shen Chang is a member of the Washington Medical Commission and is sued in her personal capacity and in her official capacity. Upon information and belief, Defendant Chang participated in the development and adoption of the challenged Statement.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 18

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

32. Defendant April Jaeger is a member of the Washington Medical Commission and is sued in her personal capacity and in her official capacity. Upon information and belief, Defendant Jaeger participated in the development and adoption of the challenged Statement.

33. Defendant Claire Trescott is a member of the Washington Medical Commission and is sued in her personal capacity and in her official capacity. Upon information and belief, Defendant Trescott participated in the development and adoption of the challenged Statement.

34. Defendant Anjali D'Souza is a member of the Washington Medical Commission and is sued in her personal capacity and in her official capacity. Upon information and belief, Defendant D'Souza participated in the development and adoption of the challenged Statement.

35. Defendant Harlan Gallinger is a member of the Washington Medical Commission and is sued in his personal capacity and in his official capacity. Upon information and belief, Defendant Gallinger participated in the development and adoption of the challenged Statement.

36. Defendant Mabel Bongmba is a member of the Washington Medical Commission and is sued in her official capacity. Upon information and belief, Defendant Bongmba participated in the development and adoption of the challenged Statement.

37. Defendant Richard Wohns is a member of the Washington Medical

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND VIOLATION OF CIVIL RIGHTS UNDER 42 USC § 1983- 19

Commission and is sued in his personal capacity and in his official capacity. Upon information and belief, Defendant Wohns participated in the development and adoption of the challenged Statement.

38. Defendant Elisha Mvundura is a member of the Washington Medical Commission and is sued in her personal capacity and in her official capacity. Upon information and belief, Defendant Mvundra participated in the development and adoption of the challenged Statement.

39. Defendant Diana Currie is a member of the Washington Medical Commission and is sued in her personal capacity and in her personal capacity and in her official capacity. Upon information and belief, Defendant Currie participated in the development and adoption of the challenged Statement.

40. Defendant Ed Lopez is a member of the Washington Medical Commission and is sued in his personal capacity and in his personal capacity and in his official capacity. Upon information and belief, Defendant Lopez participated in the development and adoption of the challenged Statement.

41. Defendant Arlene Dorrough is a member of the Washington Medical Commission and is sued in her personal capacity and in her official capacity.

42. Defendant Toni Borlas is a member of the Washington Medical Commission and is sued in her personal capacity and in her official capacity. Upon information and belief, Defendant Dorrough participated in the development and adoption of the challenged Statement.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 20

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

43.Defendant Christine Blake is a member of the Washington Medical Commission and is sued in her personal capacity and in her official capacity. Upon information and belief, Defendant Blake participated in the development and adoption of the challenged Statement.

44.Defendant Robert Pullen is a member of the Washington Medical Commission and is sued in his personal capacity and in his official capacity. Upon information and belief, Defendant Pullen participated in the development and adoption of the challenged Statement.

45.Defendant Michael Bailey is a member of the Washington Medical Commission and is sued in his personal capacity and in his official capacity. Upon information and belief, Defendant Bailey participated in the development and adoption of the challenged Statement.

46.Defendant Yanling Yu is a member of the Washington Medical Commission and is sued in her personal capacity and in her official capacity. Upon information and belief, Defendant Yu participated in the development and adoption of the challenged Statement.

47.Defendant Alden W. Roberts was a member of the Washington Medical Commission at the time of the adoption of the Statement and is sued in his personal capacity and in his official capacity. Upon information and belief, Dr. Roberts revised draft Statement with the intent of incorporating a standard of care into the

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 21

Statement, which was incorporated into the final version of the Statement.[11]

48. Defendant John Maldon was a member of the Washington Medical Commission and the President of the Commission at the time of the adoption of the Statement and is sued in his personal capacity and in his official capacity. Upon information and belief, Mr. Maldon presided over the meeting where the Statement was adopted and assisted in the development of the Statement.[12]

49. Michael Farrell is a staff Attorney and Policy Development Manager for the Washington Medical Commission and is sued in his personal capacity and in his official capacity. Upon information and belief, Mr. Farrell, in his official capacity, advised the WMC on the adoption of the Statement as he was present at the special meeting where the Statement was adopted.

## IV.    FACTS

50. The Commission's 21 board members are appointed by the Governor. Revised Code of Washington ("RCW") Section 18.71.015. Thirteen members are licensed to practice medicine; two are physician's assistants; and six are designated as "public members." *Id.*

---

11 Washington Medical Commission Special Meeting, September 21, 2021, at 6:40-6:55, "providing information on a disease process is about standard of care and those are the edits he was trying to...to bring in..." *See:* fn. 3.

12 *See*: *Id.*

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND VIOLATION OF CIVIL RIGHTS UNDER 42 USC § 1983- 22

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

51. The WMC is the state agency charged with investigating physicians, surgeons, Physician's Assistants, and other medical professionals for unprofessional conduct; the Commission held this authority prior to its adoption of the challenged Statement.

52. The WMC adopted the Position Statement without public comment or input from the regulated community, and stated at the commencement of the meeting, in which the Statement was adopted, that public comment would not be allowed.

53. The Statement provides that the Commission's "position on COVID-19 prevention and treatment is that COVID-19 is a disease process like other disease processes, and as such, treatment and advice provided by physicians and physician assistants will be assessed in the same manner as any other disease process. Treatments and recommendations regarding this disease that fall below standard of care as established by medical experts, federal authorities and legitimate medical research are potentially subject to disciplinary action." Notably, a COVID-19 standard of care existed at this time in RCW 7.70.040 and the Commission intentionally adopted the Statement as a standard of care. *See:* fn. 11, *Supra*. Yet, the Commission took the unique opportunity to unilaterally adopt a COVID-19 Statement to include a Standard of Care that: (1) did not previously exist; (2) contravened RCW 7.70.040's reasonably prudent standard; (3) was not based on the practice of medicine in Washington; (4) did not take into consideration the Patient's right to informed consent; and (5) ignored that highly trained and experienced

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 23

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

physicians, like Plaintiffs, could, and would, differ from the government's self-adopted "legitimate science" standard by opining and treating patients with alternative treatments based on experience and independent research.

54. The Position Statement has both legal and punitive effects as Plaintiffs and other medical professionals (*See: In RE: Scott C. Miller, PA*, No. M2021-272) have experienced. To sanction/punish the medical professionals under the Statement, the Commission finds fault with the professionals' speech or conduct as it relates to the Statement *vis-à-vis* COVID-19, and then issues punishment under the claim that the individual's conduct constitutes Unprofessional Conduct pursuant to RCW 18.130.180.

55. Unprofessional Conduct is defined in RCW 18.130.180 and includes issues such as: "moral turpitude, dishonesty, or corruption relating to the practice of the person's profession" (1); "Misrepresentation or concealment of a material fact" for licensing issues (2); "Incompetence, negligence, or malpractice which results in injury to a patient or which creates an unreasonable risk that a patient may be harmed." (4); "Misrepresentation or fraud in any aspect of the conduct of the business or profession" (13); and several other practices. Notably missing is a professional's divergence from a newly adopted administrative standard that was established based on "experts, federal authorities and legitimate medical research." Each such term is vague and arbitrary without further definition and was used in the Statement.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 24

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

56. The Statement impermissibly intrudes on the patient-doctor relationship and limits the ability of the doctor and the patient to have a free, open, and candid conversation about COVID-19, its treatments, and the vaccines; simply put, the standard inhibits medical professionals from providing and patients from receiving adequate informed consent.

57. A "standard of care as established by medical experts, federal authorities and legitimate medical research" without reference, clarification, or defined terms, is vague and arbitrary. Dr. Cole, for example, is licensed in 9 states and is certified in pathology; he is the former owner of a medical research laboratory that operates legitimately and legally – what Dr. Cole may say or do in another state where he is licensed may be completely "legitimate" there while being deemed illegitimate under the Statement.

58. The distinction of Plaintiffs from other professionals who were not punished under the Statement is that Plaintiffs dissented politically and scientifically from health officials on various matters related to Covid, and when threats to Plaintiffs' licenses and practices by the Board as well as criticism by politicians and from mainstream and social media personalities could not silence these Plaintiffs, the Board took punitive action. This is simply due to Plaintiffs' disagreement with the mainstream policies for the treatment of COVID-19.

59. Plaintiffs cannot communicate freely with patients, to provide informed consent, nor to treat them properly or according to the Plaintiff's best judgment,

when they fear being reported and potentially subject to discipline for giving a patient information that departs from the Commission's nameless experts and "legitimate" researchers.

60. The Commission and its Statement have placed Plaintiffs between a rock and a hard place, as Plaintiffs' patients' best interests in receiving medical information necessary to make a scientifically based decision has been limited by the Statement, removing patient rights to informed consent. Insofar as Plaintiff Eggleston does not see or treat patients, he does have the ability to share scientifically and experience-based (nearly 50 years as a licensed physician) opinions with the public as he's done with his statements that have subjected him to discipline. The Statement has been weaponized to punish doctors who dissent from the alleged mainstream "legitimate" scientific community.

61. The Statement further provides that the "WMC bases masking and vaccination safety on expert recommendations from the U.S. Centers for Disease Control and Prevention (CDC) and the Washington State Department of Health (DOH)."

62. The Statement also note that the "WMC relies on the U.S Food and Drug Administration approval of medications to treat COVID-19 to be the standard of care," yet the Commission did nothing to change this position when the FDA's own attorneys stated on the record that the FDA never adopted a formal position on the use of Ivermectin for the treatment of COVID-19. (*Supra*, Introduction).

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 26

63. The Statement concludes by encouraging reporting of medical professionals that failed to adhere to its requirements, "[t]he public and practitioners are encouraged to use the WMC complaint forms when they believe the standard of care has been breached." Encouraging the public to make anonymous complaints against medical practitioners creates an adversarial atmosphere of animosity between the public and the medical profession, the very thing the WMC accuses Plaintiffs of doing.

64. Furthermore, the WMC is allowing public complainants to complain anonymously. This use of the whistleblower statute is contrary to the plain language of the statute and public policy as it denies the medical professionals who have been accused the opportunity to face their accusers.

65. The Statement contradicts the responsible practice of medicine by mandating that medical professionals toe the government-sponsored line of speaking and treating patients rather than by urging doctors to tailor medical care and advice to each patient and his/her circumstances, using the medical professional's best professional judgment.

66. The Statement fails to give patients the opportunity to receive information sufficient to make informed decisions for their own medical care based on complete information necessary to give informed consent.

67. The Statement also fails to recognize that standards of care are not static. What might be considered experimental or untested might in six months, or a year,

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 27

become the preferred treatment, especially for a novel disease where medical science is evolving where the government allows continued evolution.

68. The Statement also fails to recognize that off-label use of a medication is common amongst the medical community, especially for new or evolving diseases, "[a]s off-label uses are presently an accepted aspect of a physician's prescribing regimen the open dissemination of scientific and medical information regarding these treatments is of great import. The FDA acknowledges that physicians need reliable and up-to-date information concerning off-label uses." *Wash. Legal Found. v. Friedman*, 13 F. Supp. 2d 51, 56 (D.D.C. 1998) Additionally, "The need for reliable information is particularly acute in the off-label treatment area because the primary source of information usually available to physicians -- the FDA approved label -- is absent." *Id.*

69. Upon information and belief, the Statement contains mere assumptions, naked assertions, and unsupported opinions conveyed by representatives of medical organizations (i.e., by using terms, such as "established science" and "verifiable fact") that amounts to nothing more than a fallacious appeal to authority, rather than an argument based on evidence and good scientific standards.

70. "[A] professional license is property and is protected by the Constitution." *Mishler v. Nevada State Bd. of Medical Examiners*, 896 F.2d 408, 409 (9th Cir. 1990).

71. A licensee's "interest in liberty is similarly implicated if a charge impairs his reputation for honesty or morality," public disclosure of the charges lodged against

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

a licensee can implicate due process required to protect that property interest. *Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 777 (9th Cir. 1982).

## V.    CAUSES OF ACTION/CLAIMS FOR RELIEF

## COUNT I – VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

**(The Position Statement Constitutes Content and Viewpoint Discrimination in Violation of the First Amendment; 42 U.S.C. § 1983)**

72. The allegations contained in paragraphs 1-71 are incorporated herein by reference and are re-alleged as set forth in full.

73. The First Amendment of the United States Constitution states, "Congress shall make no law . . . abridging the freedom of speech."

74. The First Amendment is incorporated to apply to the states by the Fourteenth Amendment. The First Amendment rights to free speech and freedom of association have been made enforceable against the states through the Fourteenth Amendment guarantee of Due Process. *NAACP v. Alabama*, 357 U.S. 449 (1958); *Gitlow v. New York*, 268 U.S. 652 (1925).

75. The Statement constitutes an impermissible and unreasonable infringement on the free speech of medical professionals licensed in Washington on the basis of content and viewpoint of a doctor's speech and imposes professional liability in contravention of the First Amendment.

76. "In the marketplace of ideas, few questions are more deserving of free-speech protection than whether regulations affecting health and welfare are sound public

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 29

policy." *Conant v. Walters*, 309 F.3d 629, 634 (9th Cir. 2002). Moreover, the Supreme Court has "stressed the danger of content-based regulations in the fields of medicine and public health, where information can save lives." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2374 (2018) (internal quotation marks and citations omitted).

77. The Supreme Court has stated that "the Constitution protects the right to receive information and ideas," which "is an inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution." *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982). Accordingly, "where the effect of a vague statute would infringe upon a party's First Amendment rights, standing requirements to challenge the statute under the Fourteenth Amendment Due Process Clause are broader than they otherwise might be." *Arce v. Douglas*, 793 F.3d 968, 987 (9th Cir. 2015) (*citing Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610 (1976); *Maldonado v. Morales*, 556 F.3d 1037 (9th Cir. 2009)). Thus, where a statute interferes with a plaintiff's First Amendment right to receive information, plaintiff has standing to challenge the law, even if it does not apply to the plaintiff. *Id.* at 987-88. *See also: 44 Liquormart v. Rhode Island*, 517 U.S. 484, 512, 116 S. Ct. 1495, 1512, 134 L.Ed.2d 711, 733 (1996) ("The text of the First Amendment makes clear that the Constitution presumes that attempts to regulate speech are more dangerous than attempts to regulate conduct. That presumption accords with the essential role that the free flow

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 30

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

of information plays in a democratic society.")

78. Challenges that involve First Amendment rights "present unique standing considerations" because of the "chilling effect of sweeping restrictions" on speech. *Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). When the challenged law "implicates First Amendment rights, the [standing] inquiry tilts dramatically toward a finding of standing." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000).

79. Plaintiffs have the right to free speech, including the right to freely communicate information to their patients even if the government does not agree with the information conveyed.

80. Plaintiffs have the corollary right to share ideas and information within the profession and with the public, including the right to engage in a genuine free speech dialogue, even if the government does not agree with the information or message conveyed in their messages.

81. The Position Statement invites arbitrary, subjective, content-based, and viewpoint discriminatory enforcement. Accordingly, the constitutionality of the law should be judged by strict scrutiny and is presumptively unconstitutional.

82. There are many less restrictive measures the state could continue to implement which would have a more direct impact supporting the public health edicts, such as its public service announcements by academic physicians who support the mainstream COVID-19 narrative, influential endorsements, and other

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 31

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

measures geared directly to influence the public. The existence of these less restrictive measures eliminates a finding that the Statement is the least restrictive means possible, and the State's use of these tools demonstrates its past and current deployment of these less restrictive means. The less restrictive measures are also subject to public accountability in the free marketplace of ideas, where information can be freely debated.

83. The Statement also fails to satisfy intermediate scrutiny, which requires that Defendants prove to this Court that in formulating the law, the lawmakers have "drawn reasonable inferences based on substantial evidence." *Peruta v. Cnty. of San Diego*, 824 F.3d 919, 957 (9th Cir. 2016). Upon information and belief, neither the Statement, nor its adopting history contains any evidence that Washington physicians have caused any harm to their patients by virtue of what they tell their patients about Covid-19 vaccines or treatments.

84. Upon information and belief, there is no actual evidence in Statement that the alleged COVID-19 "misinformation" or "disinformation" has "erode[d] the public trust in the medical profession and endanger[ed] patients" or caused or contributed to any increase in COVID-19 infections, transmissions, hospitalizations or COVID-19 related deaths. In fact, the Statement does not include supporting information or documentation that could have been hyperlinked as was the "WMC complaint forms" and the FSMB's "COVID-19 vaccine misinformation" position statement.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 32

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

85. Each of the Plaintiffs' declaration[13] contains proof of contradictory public health information by attaching factually accurate information about differing levels of success on the different health measures employed throughout the world in addressing the COVID-19 pandemic, including not recommending vaccines for certain population subsets. The declaration also establishes that some of these health measures have produced better public health metrics than what has been achieved in the US.

86. 42 U.S.C. §§ 1983, 1988 entitle Plaintiffs to a Temporary Restraining Order, declaratory relief, and preliminary and permanent injunctive relief invalidating and restraining enforcement of the Statute. Plaintiffs have suffered irreparable harm having been subject to discipline which has been publicly flaunted by the Commission. Unless Defendants are enjoined from continuing enforcement of the Statute, Plaintiffs will continue to suffer irreparable harm.

87. Even if Plaintiffs are ultimately vindicated, the process is the punishment, and highlights the chilling nature of the Statement, as evidenced by these Plaintiffs' experience and that of other medical professionals (Section I, *supra*; *See:* Cole's

---

13 Plaintiffs Eggleston notes the success of the in Brazil, Philippines, and India Wilkinson, Decl., ¶ 11. Plaintiff Wilkinson cites worldwide COVID-19 studies. Wilkinson, Decl., ¶ 32. Dr. Cole cites to early COVID-19 treatment articles found at: , which discusses worldwide treatment of COVID-19. Cole Decl., ¶ 14.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 33

loss of business addressed in ¶¶ 12-13 and in his declaration.). At a minimum, each

Plaintiff's First Amendment rights of free speech has been violated, and "[t]he loss

of First Amendment freedoms, for even minimal periods of time, unquestionably

constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74, 96 S. Ct.

2673, 2690, 49 L.Ed.2d 547, 565-66 (1976). Additionally, Plaintiffs have been

placed in a position to align speech with the Statement or risk losing license, and

an unconstitutional speech restriction is not salvageable because enforcement

authorities say that it will be enforced only in a narrow or benign manner. *See, e.g.,*

*United States v. Wunsch*, 84 F.3d 1110, 1118 (9th Cir. 1996).

88.The Statement also infringes on the First Amendment rights of patients to

receive advice and counsel from the doctors they consult. The patients are entitled

to unfiltered consultations with their doctors, rather than a potentially narrow self-

censored message that hues closely to a preferred government narrative regarding

COVID-19.

89.No speech about other diseases, no matter how serious, is covered. And

speakers who parrot the contemporary "consensus" (i.e., those who speak

"information," rather than "dis/misinformation") may continue speaking without

risk of enforcement; only those who dissent are silenced. There can be no question

that "official suppression of ideas is afoot." *R.A.V. v. City of St. Paul, Minn.*, 505

U.S. 377, 390 (1992).

90.The Statement imposes a government mandate to espouse only those ideas

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 34

that the State of Washington deems acceptable. This "on its face burdens disfavored speech by disfavored speakers." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011).

91.No speech about other diseases, no matter how serious, is covered. And speakers who parrot the contemporary "consensus" may continue speaking; only those who may dissent are silenced. There can be no question that "official suppression of ideas is afoot." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 390 (1992).

92."If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

93."If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989).

94.The Statement is not a traditional regulation of the conduct of medical professionals, although it tries to disguise itself as a conduct regulation by addressing an undefined, non-existent "standard of care" or through its multiple uses of the word "legitimate."

95.The Statement directly and specifically burdens speech and discriminates

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND VIOLATION OF CIVIL RIGHTS UNDER 42 USC § 1983- 35

against that speech based on both content and viewpoint.

96. The fact that some doctors' views are at odds with the official views of government health authorities does not undermine the right of doctors to express them; instead "minority views are treated with the same respect as are majority views." *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 235 (2000).

97. 42 U.S.C. § 1983 provides a cause of action against any person who, under color of law of any state, subjects any person within the jurisdiction of the United States to a deprivation of any rights, privileges, or immunities secured by the Constitution.

## COUNT II — THE POSITION STATEMENT IS VOID FOR VAGUENESS AND VIOLATES PLAINTIFFS' FIFTH AND FOURTEENTH AMENDMENT DUE PROCESS RIGHTS

### (Violation of the First, Fifth, and Fourteenth Amendments of the United States Constitution)

98. The allegations contained in paragraphs 1-97 are incorporated herein by reference and are re-alleged as set forth in full.

99. A statute is unconstitutionally vague when it either "fails to provide a person of ordinary intelligence fair notice of what is prohibited or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008); *see also Hill v. Colorado*, 530 U.S. 703, 732 (2000); *Tingley v. Ferguson*, 47 F.4th 1055, 1089 (9th Cir. 2022); U*nited States v. Wunsch*, 84 F.3d 1110, 1119 (9th Cir. 1996). As the Ninth Circuit recently held:

"The operative question under the fair notice theory is whether a reasonable person would know what is prohibited by the law." *Tingley*, at 1089.

100.　　To comply with the Fifth Amendment Due Process clause applicable to the states under the Fourteenth Amendment, state laws must be clear enough so that a reasonable person can determine what the law allows and prohibits. Otherwise, the law is struck down for vagueness. When a state law infringes the First Amendment right of free speech, there is a "heightened specificity" requirement for the law to be held constitutional.

101.　　The Fourteenth Amendment provides ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law."

102.　　Due process requires that people of ordinary intelligence be able to understand what conduct a given statute, rule or regulation prohibits.

103.　　Statutes, rules, or regulations that fail to provide this fair notice and clear guidance are void for vagueness.

104.　　Statutes, rules, or regulations that authorize or even encourage arbitrary or discriminatory enforcement are void for vagueness.

105.　　Statutes, rules, or regulations implicating and jeopardizing First Amendment rights are required to be especially precise.

106.　　The Statement does not define the terms "disinformation," "misinformation," "medical experts," "legitimate medical research," or "standard of care" with any precision or specificity and therefore does not give licensed doctors

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 37

like the Plaintiffs clear and adequate notice of what will be considered a violation of the Statute.

107.    The Statement imposes an unconstitutionally vague restriction on the speech of doctors such as Plaintiffs.

108.    42 U.S.C. §§ 1983 and 1988 entitle Plaintiffs to declaratory relief and preliminary and permanent injunctive relief invalidating and restraining enforcement of the Statute and damages for the infringement on their constitutional rights. Unless Defendants are restrained or enjoined from enforcing the Statute, Plaintiffs will continue to suffer additional irreparable harm.

109.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees, as well as reasonable costs of suit, under 42 U.S.C. § 1988.

110.    Plaintiffs are entitled to damages sought pursuant to 42 U.S.C. § 1983.

## COUNT III—VIOLATION OF ARTICLE I, SECTION 5 OF WASHINGTON STATE CONSTITUTION
### (Washington Constitution, Article I, Section 5)

111.    The allegations contained in paragraphs 1-110 are incorporated herein by reference and are re-alleged as set forth in full.

112.    Washington Constitution Article I, Section V, *Freedom of Speech*, reads: "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right."

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 38

113.     The most critical flaw in the Statement is its connection with "legitimate medical research" and the Statement's reliance on "medical experts" that fails to define or identify either term and/or the prohibited conduct.

114.     "In regard to claims of overbreadth, the text of art. I, § 5 is *less tolerant* than the First Amendment of overbroad restrictions on expression when such restrictions rise to the level of a prior restraint." *Ino Ino, Inc. v. City of Bellevue*, 132 Wash. 2d 103, 117, 937 P.2d 154, 163 (1997); *citing O'Day v. King County*, 109 Wn.2d 796, 804, 749 P.2d 142 (1988). (Emphasis added.) "The broad language of art. I, § 5 has been found to warrant greater protection for speech, both spoken and written, in some contexts. [...] Moreover, art. I, § 5 mentions only the right to speak, write and publish." *Id.* (cleaned up.)

115.     Content-based regulations target speech based on its communicative content. "As a general matter, such laws are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018); *Sheehan v. Gregoire*, No. C02-1112C, at *1 (W.D. Wash. May 22, 2003) ("the First Amendment precludes the government from proscribing speech because it disapproves of the ideas expressed. *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382 (1992).").  In Washington State, even content-neutral time, place, and manner restrictions must meet strict scrutiny and be narrowly tailored to serve a compelling government interest.  *State v. Noah*, 103 Wn. App.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 39

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

29, 41 (2000).

116.    "The Washington Supreme Court applies a federal analysis when confronting Article I, Section 5 challenges to restrictions on commercial speech." *Nat'l Fed'n of Retired Persons v. Ins. Comm'r*, 120 Wash.2d 101, 119, 838 P.2d 680 (1992); *see also, Ino Ino, Inc. v. City of Bellevue*, 132 Wash.2d 103, 116, 937 P.2d 154 (1997). Thus, this Court should "incorporate[] Plaintiffs' Washington Constitution claim." *Ballen v. City of Redmond*, No. C03-2580P, 2004 U.S. Dist. LEXIS 31358, at *11 (W.D. Wash. June 15, 2004; *Aff'd. Ballen v. City of Redmond*, 466 F.3d 736 (9th Cir. 2006)).

117.    42 U.S.C. § 1983 provides a cause of action against any person who, under color of law of any state, subjects any person within the jurisdiction of the United States to a deprivation of any rights, privileges, or immunities secured by the Constitution.

### COUNT IV – THE POSITION STATEMENT VIOLATES THE WASHINGTON ADMINISTRATIVE PROCEDURES ACT, REVISED CODE OF WASHINGTON SECTION 34.05, ET SEQ.

**(The Position Statement Constitutes a Rule and was Adopted Without Proper Notice and Comment and Outside of the Requirements of RCW 34.05.230 in Violation of the Administrative Procedures Act; The Statement Violates Constitutional Provisions (i.e., First, Fifth, and Fourteenth Amendments of US Constitution); the Statement Provided No Comment Period and was Adopted Without Compliance with Statutory Rule-Making Procedures; and the Statement is Arbitrary and Capricious)**

118.    The allegations contained in paragraphs 1-117 are incorporated herein by reference and are re-alleged as set forth in full.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 40

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

119.     The Statement is a rule as it: (1) has "general applicability;" (2) the violation of which subjects a person to a penalty or administrative sanction; and (3) "establishes, alters, or revokes any qualification or requirement relating to the enjoyment of benefits or privileges conferred by law." RCW 34.05.010(16).

120.     The Statement adds "new requirement[s] to an already well defined regulation" by requiring physician speech and treatment methodologies to comport with the Commission's ill-defined COVID-19 narrative. Such requirements constitute "a 'rule' subject to the formal rule making procedures." *Providence Physician Servs. Co. v. Dep't of Health*, 196 Wash. App. 709, 726-27, 384 P.3d 658, 667 (2016); *Citing* Failor's *Pharmacy v. Dep't of Soc. & Health Servs.*, 125 Wn.2d 488, 886 P.2d 147 (1994). RCW 7.70.040, which adopted a standard of care for COVID-19 related treatment pre-existed the Statement, and the Statement did nothing more than add ill-defined requirements to the well-defined regulation.

121.     The requirement to not spread "misinformation" or "disinformation," subjective terms created by the Commission *for* its regulation of medical professionals during the COVID-19 pandemic prescribed by the Statement, and the Statement's associated encouragement of reporting complaints to the WMC and the Statement's threat to "subject [licensees] to disciplinary action," constitute a Rule, which was without comment in violation of the Administrative Procedures Act. RCW 34.05.010(16).

122.     As a Policy Statement, as defined by the WMC, the Statement is a

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 41

"written description of the current approach of an agency to implementation of a statute or other provision of law, of a court decision, or of an agency order, including where appropriate the agency's current practice, procedure, or method of action based upon that approach."[14]

123.    The APA provides that "Current interpretive and policy statements are advisory only. To better inform and involve the public, an agency is encouraged to convert long-standing interpretive and policy statements into rules." Policy Statements are not and cannot be enforceable.

124.    The Statement was adopted in contravention of the APA requirement to publish interpretive or policy statements in the Washington State Register, and the challenged Statement was not. *See*: RCW 34.05.230(1) and (4). The Statement was not published in this manner violating the APA.

125.    A rule will be reversed under the Washington Administrative Procedures Act where an administrative decision "is based on an error of law, if it is not based on substantial evidence, or if it is arbitrary or capricious." *Whitehall v. Wash. State Emp't Sec. Dep't*, No. 83299-9-I, 2023 Wash. App. LEXIS 159, at *7-8 (Ct. App. Jan. 30, 2023) *Citing*: RCW 34.05.570(3)(d),(e), (i); *Michaelson v.*

---

[14] WMC Website, *Policies & Rules*. Available at: https://wmc.wa.gov/policies-rules#Rules%20/%20Policies%20/%20Procedures%20/%20Guidelines%20/%20IS

Last accessed: February 23, 2023.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 42

*Emp't Sec. Dep't*, 187 Wn. App. 293, 298, 349 P.3d 896 (2015).

126.     The Statement violates the Administrative Procedures Act because it violates constitutional provisions. RCW 34.05.570(2)(c).

127.     The Statement violates the Administrative Procedures Act because it was adopted without compliance with statutory rule-making procedures. RCW 34.05.570(2)(c).

128.     The Statement violates the Administrative Procedures Act because it is arbitrary and capricious. RCW 34.05.570(2)(c).

129.     The Statement violates the Administrative Procedures Act because it is not supported by substantial evidence. RCW 34.05.570(3)(e).

130.     The Washington Administrative Procedure Act obligates the grant of relief when an agency has acted *ultra vires*, or outside of its statutory authority or jurisdiction. RCW 34.05.570(3)(b).

131.     The Statement is arbitrary and capricious and was adopted in an arbitrary and capricious manner without "a process of reason" with no supporting evidence or clearly defined terms. *Puget Sound Grp. LLC v. Wash. State Liquor & Cannabis Bd.*, No. 50090-6-II, 2018 Wash. App. LEXIS 1600, at *10 (Ct. App. July 10, 2018) *quoting Rios v. Dep't of Labor & Indus.*, 145 Wn.2d 483, 501, 39 P.3d 961 (2002)).

///

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 43

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

## COUNT V—VIOLATION OF DUE PROCESS CLAUSE OF THE FIFTH AND FOUREENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

### (Violation of Patient Fundamental Rights to Informed Consent and Personal Bodily Integrity Include the Right to Off-Label Treatment for COVID-19; 42 United States Code § 1983)

132.    The allegations contained in paragraphs 1-131 are incorporated herein by reference and are re-alleged as set forth in full.

133.    In *Washington v. Glucksberg*, the United States Supreme Court affirmed that the Due Process Clause of the United States Constitution protects bodily integrity, as follows: "We have also assumed, and strongly suggested, that the Due Process Clause protects the traditional right to refuse unwanted lifesaving medical treatment." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 2267-68, 117 S. Ct. 2302, 2267-68 (1997) Citing: *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278-279 (1990). But we "have always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins*, 503 U.S. 115, 125 (1992). "By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. The Due Process Clause guarantees more than fair process, and the "liberty" it protects includes more than the absence of physical restraint. *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 2267, 117 S. Ct. 2302, 2267 (1997) *Citing: Collins* v. *Harker Heights*, 503 U.S. 115, 125

(1992) Importantly, this extension has included the protection of one's "bodily integrity." *Id.*, Citing *Rochin* v. *California*, 342 U.S. 165 (1952).

134.    A fundamental right must be either enumerated in the Bill of Rights or "deeply rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Kheriaty v. Regents of the Univ. of Cal.*, No. 22-55001, 2022 U.S. App. LEXIS 32406, at *3 (9th Cir. Nov. 23, 2022) Citing: *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997) (cleaned up).

135.    A court will apply strict scrutiny when the challenged government action infringes on a fundamental right. *Id.*; *Citing Reno v. Flores*, 507 U.S. 292, 301-02, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993).

136.    Based on the right to privacy adopted by the United States Supreme Court, *supra*, Plaintiffs seek a declaratory judgment that patients have a privacy right to obtain prescriptions for their off-label drugs, and that the Board cannot investigate or sanction a physician solely for writing prescriptions for the off-label use of medications for Covid-19. Plaintiffs also seek a permanent injunction against the Defendants enforcing the requested declaratory judgment.

137.    "[T]he federal government has recognized that doctors may use medical devices for **off-label** purposes as long as it is medically necessary and reasonable." *The Dan Abrams Co. LLC v. Medtronic Inc.*, 850 F. App'x 508, 509

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 45

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

(9th Cir. 2021). *Citing*: *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350, 121 S. Ct. 1012, 148 L. Ed. 2d 854 (2001) ("'[O]ff label' usage of medical devices . . . is an accepted and necessary corollary of the FDA's mission to regulate in this area without directly interfering with the practice of medicine."); U.S. Dep't of Health & Hum. Serv. (HHS), *Medicare Benefit Policy Manual*, ch. 14 § 10, available at https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/bp102c14.pdf (noting that Medicare reimburses for "[*d*]*evices* cleared by the FDA through the 510(k) process"—not cleared *uses* of a device) (emphasis added). The FDA also allows off-label uses for drugs and biologics in addition to medical devices. *See:* https://www.fda.gov/regulatory-information/search-fda-guidance-documents/label-and-investigational-use-marketed-drugs-biologics-and-medical-devices.

138.    The Centers for Medicare & Medicaid (CMS) guidance explain that "a device is not 'reasonable and necessary' — and thus is not eligible for Medicare coverage—if it is (a) "not 'safe' and 'effective," (b) "experimental," (c) "not appropriate for the individual beneficiary's needs," or (d) "substantially more costly than a medically appropriate and realistically feasible alternative pattern of care." *Int'l Rehab. Sci., Inc.*, 688 F.3d at 997 (cleaned up). CMS guidance makes clear that safety and efficacy determinations are based on "authoritative evidence" or "general[] accept[ance] in the medical community." *Id.*

139.    The FDCA expressly protects **off-label** use: "Nothing in this chapter

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 46

shall be construed to limit or interfere with the authority of a health care practitioner to prescribe or administer any legally marketed device to a patient for any condition or disease within a legitimate health care practitioner-patient relationship." 21 U.S.C. § 396. In addition, the Supreme Court has emphasized that **off-label** use by medical professionals is not merely legitimate but important in the practice of medicine. *Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341, 350, 121 S. Ct. 1012, 148 L. Ed. 2d 854 (2001). *Carson v. Depuy Spine, Inc.*, 365 F. App'x 812, 815 (9th Cir. 2010).

140.    Upon information and belief, prescribing Ivermectin and HCQ are "not approved" by the FDA for treatment and prevention of Covid-19; however, the FDA has not addressed off-label use of either drug for the treatment of COVID-19, and FDA legal representatives confirmed that the FDA's position did not constitute binding, final rulemaking. *See:* Introduction, *supra*. The FDA has not taken a position on off-label use notwithstanding the fact that dozens of studies worldwide have demonstrated that these drugs are beneficial for the treatment of Covid-19.

141.    Washington's standard of care on the treatment of COVID-19 outside of the "reasonably prudent" standard discussed, *supra*, then the Commission adopted a standard through the Statement. As addressed above, adopting a standard of care through a Position Statement adopted in a Special Meeting violated the Washington APA (Count V, *supra*). Moreover, the standard of care adopted through the Statement defers to the FDA, which allows for off-label use of devices and drugs.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 47

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

As the Statement cherry-picks its allegiance to *portions* of the FDA's rules and regulations to support its conclusion, the WMC, through the Statement, has violated patient rights to informed consent, which could offer alternative treatment with medicines, including Ivermectin that offered potentially effective off-label uses. Nonetheless, Plaintiffs were barred from (1) discussing; and (2) treating patients with off-label medicines that would have otherwise been allowed under current FDA regulations.

142.     In Washington, the doctrine of informed consent requires a physician, prior to providing treatment, to "inform the patient of the treatment's attendant risks. The doctrine is premised on the fundamental principle that "'[e]very human being of adult years and sound mind has a right to determine what shall be done with his own body'." *Smith v. Shannon*, 100 Wn.2d 26, 29, 666 P.2d 351, 354 (1983). *Citing: Schloendorff v. Society of N.Y. Hosp*., 211 N.Y. 125, 129, 105 N.E. 92 (1914) (Cardozo, J.), *overruled on other grounds, Bing v. Thunig*, 2 N.Y.2d 656, 667, 143 N.E.2d 3, 163 N.Y.S.2d 3 (1957). Importantly, "[a] necessary corollary to this principle is that the individual be given sufficient information to make an *intelligent* decision." *Id. Citing: Canterbury v. Spence*, 464 F.2d 772, 783 (D.C. Cir. 1972).

## COUNT VI—DEFAMATION/FALSE LIGHT

143.     The allegations contained in paragraphs 1-142 are incorporated herein by reference and are re-alleged as set forth in full.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 48

144.    Defendants, by printing each Plaintiff's statement of charges and declaring that the Plaintiff has spoken mis/disinformation, have provided a publicly available document with false and misleading statements about each Plaintiff. These statements were libelous and defamatory in nature as Defendants stated that the Plaintiffs' statements were dis/misinformation. As the Commission publicly displays statements of charges and other disciplinary actions, Defendants should have known that these statements would be viewed by the public.

## COUNT VII—TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP AND/OR EXPECTANCY AS TO PLAINTIFF COLE

145.    The allegations contained in paragraphs 1-144 are incorporated herein by reference and are re-alleged as set forth in full.

146.    The Commission's prosecution and persecution of each Plaintiff has wrongfully caused harm to each and has interfered with Wilkinson and Cole's businesses and was a cause of the dissolution of Cole's business. The Commission's ill-founded, improper, and unconstitutional bases for targeting Cole and making a public spectacle of the prosecution of his licensing is clear evidence of defendants' tortious interference with Cole's legitimate business and professional expectancy in being able to continue his Pathology and diagnostics practice. As Cole has declared, and as stated above, Cole has lost his business due to the Commission's publicity of the prosecution of his license. *Supra*, ¶¶ 10-13; Cole Decl., ¶ 12-14.

///

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 49

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

# VI.   CONCLUSION AND RELIEF SOUGHT

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against the Defendants as set forth in this Complaint and specifically that the Court:

A. Declare that the Statement violates Plaintiffs' rights under the First Amendment of the United States Constitution because it discriminates based on viewpoint and content;

B. Declare that the Statement violates rights to due process of law under the Fourteenth Amendment to the United States Constitution due to its vagueness;

C. Declare that the Statement violates Washington State Administrative Procedures Act as the rule violates the US and Washington Constitutional principles, was adopted without compliance of statutory rule-making procedures, and is arbitrary and capricious;

D. Issue a Temporary Restraining Order, then an injunction restraining and enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them (*see* Fed. R. Civ. P. 65(d)(2)), and each of them, from enforcing the Statement against Plaintiffs and all other medical professionals subject to licensing or discipline by the Commission;

E. Stay all underlying proceedings related to each Plaintiff's charges in full (respectively, Cole: SOC No. 2022-207; Wilkinson: SOC No. M2022-196; and Eggleston: SOC No. M2022-204), or in part, as related to: (1) enforcement of the

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 50

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

challenged Statement; (2) COVID-19 "misinformation" and/or "disinformation;" (3) claims that the Plaintiff's speech resulted in "mistrust" for, or otherwise impacted, the medical community or the community(ies) at large; and/or (4) the use, application, prescription, or treatment of persons with Ivermectin or Hydroxychloroquine;

F. Stay all other disciplinary proceedings by the WMC for medical professionals as related to the Statement or against professionals who: (1) expressed opinions on COVID-19 and Ivermectin or Hydroxychloroquine treatment; or (2) who or treated COVID-19 patients with the such medicines, resulting in discipline from the WMC;

G. Issue Attorney's fees, costs, and expenses pursuant to 42 U.S.C. §§ 1983 and 1988;

H. Award Damages for Plaintiff Cole in the amount of at least $32,000,000; and

I. Any other legal or equitable relief to which Plaintiffs may be entitled.

**DATED** this 10th day of March, 2023.

**SILENT MAJORITY FOUNDATION**

*/s/ Simon Peter Serrano*
Simon Peter Serrano, WSBA No. 54769
Karen L. Osborne, WSBA No. 51433
Austin F. Hatcher, WSBA No. 57449
5238 Outlet Dr.
Pasco, WA 99301
(530) 906-9666
pete@smfjb.org

*Counsel for Plaintiffs*

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND
VIOLATION OF CIVIL RIGHTS
UNDER 42 USC § 1983- 51

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of March 2023, I electronically filed the foregoing document with the Clerk of the United States District Court using the CM/ECF system which will send notification of such filing to all parties who are registered with the CM/ECF system.

DATED this 10th day of March, 2023.



*/s/Madeline Johnson*
Madeline Johnson